UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TE DORA BROWN | No. 23 CR 97<br><br>Honorable Elaine E. Bucklo |

**THE GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

The United States of America, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, hereby respectfully moves, *in limine*, for entry of the following orders concerning evidence, argument, or inquiry at trial in this case.[1]

## I. MOTION TO EXCLUDE EVIDENCE OR ARGUMENT THAT IS IRRELEVANT

It is fundamental that "evidence which is not relevant is not admissible." FED. R. EVID. 402, 103(c). "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Even if arguably "relevant," evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

[1] For purposes of efficiency and ease of reference, the government has filed its motions *in limine* in a single document. No single motion herein exceeds the 15-page limit as imposed by the Local Rules.

In this case, defendant was indicted along with her husband, co-defendant Christopher Scott. As outlined in the indictment, defendant and Mr. Scott jointly devised and participated in a scheme to defraud Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan Program ("EIDL Program"). *See* Dkt. 1. In April 2025, Mr. Scott pleaded guilty, and in August 2025, the Court sentenced him to seventy months in prison. Dkts. 85, 112, 117. While evidence of Mr. Scott's participation in defendant's scheme to defraud the PPP and EIDL Program is relevant, the government anticipates the defendant may seek to introduce evidence relating to irrelevant topics, such as marital issues or Mr. Scott's bad conduct that is wholly unrelated to fraudulent conduct at issue in this trial.

With the foregoing tenets in mind, the government requests that the Court exclude evidence or argument concerning the foregoing matters or, at a minimum, require a proffer of such evidence outside of the presence of the jury to ensure that the evidence is properly admissible.

## II. Motion to Exclude Argument, Evidence, or Inquiry that may Encourage Jury Nullification

This Court should preclude the defendant from arguing, presenting evidence, or pursuing lines of inquiry designed to elicit jury nullification. The law is clear: it is improper for a defendant to suggest in any way that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act

lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (citations omitted)); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("Neither the court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *see also* Seventh Circuit Pattern Federal Criminal Jury Instruction 1.01 (2023).

Although the government cannot anticipate each form of potential "jury nullification" argument or evidence in this case, the government moves to exclude the potential areas noted below, all of which are irrelevant to the elements of the crimes charged. The government seeks to preclude any argument or questioning, no matter what its form, that would, in effect, "encourage [the] jury to acquit 'under any circumstances' regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (quoting *United States v. Dougherty*, 473 F.2d 1113, 1137 (D.C. Cir. 1972)).

### A. Argument or Questioning about the Motivation for Investigating or Prosecuting this Case Should Be Precluded.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *see Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) ("So long as the prosecutor had probable cause to believe that the accused committed an offense defined by statute, the

decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." (internal quotations omitted)); *United States v. Goulding,* 26 F.3d 656, 667 (7th Cir. 1994). In addition, inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *E.g.*, *id.* (noting that, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such evidence was irrelevant").

Accordingly, this Court should preclude the defendant from making argument or inquiries concerning the government's motivations for investigating and prosecuting this case.

### B. Argument or Evidence Concerning Allegations of Governmental Misconduct or Outrageous Government Conduct Arguments Should Be Precluded

Defendant should be barred from suggesting that the government engaged in misconduct or outrageous conduct in front of the jury, for that is not relevant at trial. *See United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit."); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995); *see also United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.").

Nor should the defendant be permitted to offer evidence or argument about the government's charging decisions by, for example, suggesting that others engaged in the same conduct without having been charged. *United States v. Young*, 20 F.3d 758

(7th Cir. 1994) (government's failure to charge other defendants was irrelevant to the question of the guilt or innocence of the defendant on trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (holding that the "selective prosecution" and "outrageous government conduct" defenses are a matter of law for the district court, rather than an issue of fact for the jury); *accord United States v. Armstrong*, 517 U.S. 456, 463-64 (1996) (holding that selective prosecution claims are "not a defense on the merits" and should only be granted in extraordinary cases, because the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws"); *United States v. Mosley*, 965 F.2d 906, 909-10 (10th Cir. 1992) (noting that the circuits which recognize this "extraordinary defense" do so as a matter of law in the most "narrow" and "egregious circumstances"). Thus, courts routinely grant motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, *3 (N.D. Ill. Aug. 13, 1991); *see also United States v. Infelise*, 1991 WL 251654 (N.D. Ill. Nov. 14, 1991) (holding that "selective prosecution and outrageous government conduct must be resolved by the court and not the jury.").

The introduction of any such evidence would serve no purpose other than "to try some person other than the defendant and some issues other than [her] guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" is this: "the prosecution was not nice or could have done

it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* Defendant thus should be prohibited from offering any evidence or argument about the government's charging decisions or any other perceived government misconduct.[2]

### C. Argument or Cross-Examination Regarding Investigative Steps Not Taken by the Government.

Cross-examining government agents about investigative steps not taken is another irrelevant line of inquiry that is sometimes pursued by a defendant at trial. Investigative decisions, much like charging decisions, typically have little or no relevance to the jury's determination of guilt or innocence. Shifting the spotlight from a defendant to the government inevitably wastes time and diverts the jury's attention from the issue of guilt. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998). It is well within a district court's discretion, then, to preclude a defendant from questioning witnesses about investigative steps not taken. *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999).

The *Robbins* case is one such example. There, the district court precluded defense counsel from attempting to cross-examine an agent "about the extent of his investigation," sustaining an objection to counsel's question as to whether the agent "had investigated the length of time that [a co-defendant] and [defendant] had known each other." *Id.* The court explained: "[I]t is not my intention to allow this trial to

[2] Defendant may, of course, inquire about benefits that specific government witnesses received that may be relevant to questions of bias. But any inquiry in this regard should be limited to the benefits a witness received or expected, *without* further commentary as to whether it was appropriate for the government to extend such benefits to the witnesses.

become a trial of the investigation. And it is my intention that the jury make its decision based on evidence actually presented rather than . . . speculation about the possible existence of other evidence that might have been developed if the investigation had been carried out in some other way." *Id.*

On appeal, the Seventh Circuit found that the district court had not abused its discretion in limiting defense counsel's cross- examination of the agent. *Id.* The district court's perception that defense counsel's line-of-questioning might confuse the jury and cause it to speculate about evidence not before the jury were "valid reason[s]" for limiting cross-examination, the Seventh Circuit concluded, adding that the subject matter only had "marginal relevance." *Id.*

"Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." *McVeigh*, 153 F.3d at 1192; *see also United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) ("the jury would not be called upon to determine whether the government's investigation had been good or bad"). And, unless a defendant can connect his line-of-questioning with other evidence in the case or with a specific defense, such an inquiry has limited probative value while risking substantial prejudice. *United States v. Patrick,* 248 F.3d 11, 23 (1st Cir. 2001) ("[s]uch speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially

outweighed' the evidence's probative value"); *United States v. Estell*, 641 F. App'x. 552, 556 (7th Cir. Mar. 10, 2016) (unreported) ("But trial judges have discretion to limit argument on tangential issues that could confuse the jury, and that includes a defendant's complaints about the adequacy of the government's investigation. Establishing Estell's coercion defense was his responsibility, not the government's.") (cleaned up).

The investigative agencies are not on trial in this case. Without a reasonable and specific connection to the evidence introduced at trial, as opposed to general claims that the agents could have done things better or differently, any line of questioning or argument intended to put the investigation on trial should be excluded.

### D. Argument or Evidence Regarding Specific Lawful Conduct

Except for general reputation or opinion evidence, which may be properly offered by a character witness under Rule 405(a), the government moves to exclude all specific evidence of the defendant's lawful conduct. *See United States v. White*, 737 F.3d 1121, 1137 (7th Cir. 2013) ("Under 405(a), admissible character evidence may be introduced in the form of opinion or reputation testimony."). In this regard, the law is clear: "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012) (citing *United States v. Heideke*, 900 F.2d 1155, 1162 (7th Cir. 1990)). Therefore, a defendant "may not seek to establish [her] innocence . . . through proof of the absence of criminal acts on [other]

specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding evidence that defendants met regularly and did not discuss criminal activity); *see also United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (excluding evidence that car dealer paid for some cars instead of stealing them).

To hold otherwise would be to eviscerate Rule 405's limitations, which forbid proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See White*, 737 F.3d at 1137 ("*Specific instances* of the defendant's character . . . may only be introduced if that character 'is an essential element of a charge, claim, or defense.'" (citing Rule 405(b)). Like Rule 403, Rule 405 is intended to prevent the series of wasteful mini trials that would inevitably ensue if a defendant were allowed to pursue this irrelevant line of inquiry. *See* Committee Notes to Rule 405, Subdivision (a) ("Fearing . . . wholesale allowance of opinion testimony might tend to turn a trial into a swearing contest between conflicting character witnesses."). The Notes conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *See Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

Here, several of the businesses involved in defendant's fraudulent scheme purportedly provided childcare or daycare services. The government anticipates that defendant may seek to elicit testimony that, at some point in her life, she may have provided such services to the public lawfully. The defendant may attempt to offer such evidence directly or through cross examination. If offered to establish that she

operated such businesses at times that are irrelevant to the charged scheme, such questioning should be prohibited as irrelevant and as inadmissible under Rule 403. And to the extent the defendant intends to offer evidence regarding her character, this Court should permit her to do so only in accordance with Rule 405(a)'s requirements.

### E. Arguments and Evidence Regarding Penalties Faced by the Defendant Should Be Precluded

The government moves this Court to preclude the defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties she will face if convicted. Such argument or evidence concerning punishment is improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991). Mention of the potential penalties faced by the defendant would serve only the improper purpose of promoting jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.") (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980)).

Accordingly, this Court should preclude the defendant from introducing evidence, making argument, or otherwise mentioning potential penalties resulting from her conviction in this case.

**F. Argument or Evidence by Defendant of Family Circumstances**

While the government acknowledges that a defendant is permitted to introduce limited testimony concerning her background, the government respectfully moves this Court to preclude evidence and argument regarding defendant's family needs or the needs of her children, including any arguments or evidence designed either to imply that defendant's criminal conduct resulted from a sympathetic motive or excuse, or to invoke sympathies regarding the impact of a conviction upon defendant's family. Such evidence is irrelevant to defendant's factual guilt, is designed for no purpose other than to invoke improper appeals for jury nullification, and should be excluded. *See United States v. Henderson*, 2012 WL 698796, at *2 (N.D. Ill. Mar. 2, 2012) ("Argument or evidence relating to a defendant's family needs is not admissible to infer a motive or an excuse for [a] defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon a defendant's family."); *Shields*, 1991 WL 236492 at *4 (granting motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member"). Accordingly, the defendant should be barred from discussing her family's needs.

## III. Motion to Preclude Requests for or Commentary Regarding Discovery in the Presence of the Jury

The government respectfully moves to preclude the defendant from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Sargent*, No. 16 CR 10-2, 2017 WL 11505360, at *2 (N.D. Ill. Aug. 7, 2017) ("Requesting discovery and commenting on discovery matters in the presence of the jury is inappropriate.") (citations omitted); *United States. v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion *in limine* on similar grounds because "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information.").

Discovery requests by the defendant, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government seeks an order from this Court that any requests for discovery or comments relating to discovery be made outside the presence of the jury. *See generally United States v. Gray*, No. 2:07 CR 166, 2010 WL 1258169, at *2-3 (N.D. Ind. Mar. 26, 2010) ("[G]rant[ing] the government's motion to preclude requests of discovery from witnesses or opposing counsel, moving the court for such discovery or otherwise commenting on discovery matters in the presence of the jury. Any necessary requests for or comments about discovery can be made outside of the

jury's presence."); *see also Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D. Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

## IV. Motion to Preclude Argument Explaining or Defining Reasonable Doubt

The Seventh Circuit has repeatedly held that "reasonable doubt" is a term that should not be defined by the trial court or counsel. *E.g.*, *United States v. Hatfield*, 590 F.3d 945, 949 (7th Cir. 2010); *United States v. Thompson*, 117 F.3d 1033 (7th Cir. 1997) ("The law is clear in this circuit that it is improper for attorneys to attempt to define the term [reasonable doubt]"). The pattern jury instructions for the Seventh Circuit similarly omit any instruction defining "reasonable doubt." *See* Committee Comment to Seventh Circuit Pattern Criminal Jury Instruction 1.04. Though the defendant may argue that the government bears the burden of proving her guilt beyond a reasonable doubt, neither party should be permitted to define that term to the jury at trial. *Glass*, 846 F.2d at 386 ("Trial counsel may argue that the government has the burden of proving the defendant's guilt 'beyond a reasonable doubt,' but *they may not attempt to define 'reasonable doubt.'"*) (emphasis in original).

Accordingly, the government seeks an order from this Court precluding defendant from explaining or defining reasonable doubt at trial.

## V. MOTION TO PRECLUDE A "MISSING WITNESS" ARGUMENT

It is within the Court's discretion to prohibit argument by either side concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). Indeed, "when the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992); *see also United States v. Cochran*, 955 F.2d 1116, 1123 (7th Cir. 1992) ("[T]he district court did not abuse its discretion in prohibiting discussion of missing witnesses during closing arguments. Because the court determined that Jones and O'Sheilds were equally available to either party, it was appropriate not to allow either party to comment on the absent witnesses."). Therefore, the government requests that the Court prohibit defendant from introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify.

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. Ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio,* 830 F.2d at 1392-93. In *Sblendorio*, defense counsel for two defendants commented during closing argument that the government did not call two individuals to the witness stand. *Id*. at 1390. In rebuttal, the prosecutor replied, "You heard every defense attorney ask about, 'Where is this witness[?]. . . They don't have

to prove anything, but they have subpoena power just like the government.'" *Id*. at 1390-91.

On appeal, the defendant argued that the prosecutor's remarks were improper because they tended to shift the burden of proof to the defendant. *Id*. at 1391. The court disagreed, holding that the prosecutor may comment on a defendant's failure to call witnesses as long as the comments do not invite inferences based on the privilege against compulsory self-incrimination. *Id.* The court explained that "[t]he jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the evidence." *Id.* at 1393-1394; *see also United States v. Miller*, 276 F.3d 370, 374-75 (7th Cir. 2002). Thus, once the subject had been opened, it was permissible for the government to respond. *Sblendorio,* 830 F.2d at 1394; *see also United States v. King*, 150 F.3d 644, 649 (7th Cir. 1998) (prosecutor's reference during closing argument to the defendant's opportunity to call government agents —"where the defendant himself has broached the subject of missing witnesses by asking the jury to in a sense penalize the government for its failure to produce the [witnesses]" —was "clearly" proper); *United States v. Aldaco*, 201 F.3d 979, 988 (7th Cir. 2000) ("[I]t was not improper for the prosecutor to make clear to the jury that the defendant, like the government, has the power to subpoena any witness or witnesses relevant to the case after [the defendant's] counsel had opened the door to this reply argument by the prosecution."); *United States v. Villegas*, 655 F.3d 662, 671-72 (7th Cir. 2011) (same).

## VI. Motion to Preclude Defendant's Introduction of Self-Exculpatory Hearsay

The government anticipates that its trial presentation will include, among other evidence, emails exchanged by the defendant, as well as testimony regarding defendant's statements. The items of evidence encompassing defendant's prior admissions may contain defendant's own statements that they contend are self-exculpatory. By this motion, the government seeks to preclude defendant's introduction of her own self-exculpatory statements, whether through excerpts of their own emails or recorded statements, or during cross-examination of the government's witnesses, as inadmissible hearsay.

When offered by the government, defendant's past out-of-court statements constitute party-opponent admissions, which are exempt from the hearsay rule. Fed. R. Evid. 801(d)(2)(A); *United States v. McGee*, 189 F.3d 626, 631 (7th Cir. 1999) ("[A]dmissions by a party-opponent do not constitute hearsay."). If elicited by defendant, however, those same statements are inadmissible hearsay. Fed. R. Evid. 801(c); *United States v. Doxy*, 225 F. App'x 400, 402 (7th Cir. Apr. 13, 2007) ("Typically, a party's self-serving, exculpatory, out-of-court statement is inadmissible hearsay."); *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) ("Ordinarily a defendant's self-serving, exculpatory, out of court statements would not be admissible."); *Stock v. Rednour*, 621 F.3d 644, 649–50 (7th Cir. 2010) (recognizing "the basic evidentiary principle that self-serving, out-of-court statements are inadmissible for the purpose of exculpating the declarant").

Hearsay "does not become admissible just because it favors a defendant," and, as the Seventh Circuit notes, the "hearsay rule and its exceptions" are "compatible with the Fifth and Sixth Amendments." *Gomez v. Greer*, 896 F.2d 252, 253–54 (7th Cir. 1990) (exculpatory portions of non-testifying co-defendant's statements properly excluded as hearsay); *see also United States v. Vargas*, No. 08 CR 630, 2011 WL 116826, at *2 (Jan. 6., 2011) (Kennelly, J.) (denying motion for new trial predicated, among other things, on court's exclusion of defendant's self-exculpatory out-of-court statement, where defendant failed to establish any hearsay exceptions justifying its admission). Moreover, permitting defendant to place her own statements before the jury without subjecting them to cross-examination is "precisely what the hearsay rule forbids." *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (trial court properly sustained hearsay objection to defendant's attempt to solicit his post-arrest statement during cross-examination of government's witness); *see also United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985) (defendant's attempt to elicit exculpatory statements made at the time of arrest to prove he lacked requisite knowledge was inadmissible hearsay).

What's more, defendant cannot invoke the rule of completeness under Fed. R. Evid. 106 to introduce *new* emails or recordings containing their own statements that are not "'necessary to (1) explain the admitted portions, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, and (4) insure a fair and impartial understanding.'" *United States v. Ambrose*, 668 F.3d 943, 964 (7th Cir. 2012) (quoting *United States v. Yarrington*, 640 F.3d 772, 780 (7th Cir. 2011)); *see also Reese*, 666

F.3d at 1019 (holding self-exculpatory statements on recording of conversation between defendant and a co-conspirator inadmissible under rule of completeness, where conversation at issue was "entirely separate and distinct from the admitted recorded conversations" offered into evidence by the government).

Defendant's self-exculpatory statements, similarly, cannot be admitted under the state-of-mind exception to the hearsay rule. *See* Fed. R. Evid. 803(3). The exception applies only to the "declarant's then-existing statement (such as motive, intent, or plan) or emotional, sensory, or physical condition." *Id.* It does not apply to a "statement of memory or belief to prove the fact remembered or believed." *Id.* The "statement must be contemporaneous with the mental state sought to be proven," "it must be shown that [the] declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts," and "the declarant's state of mind must be relevant to an issue in the case." *United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992). Future-looking statements may qualify for the exception, but backwards-looking statements generally do not. *See United States v. Vargas*, 689 F.3d 867, 877 (7th Cir. 2012) (past tense of statement demonstrated it sought to "prove a fact remembered" and thus did not qualify for 803(3) exception). To the extent any state-of-mind statements are admitted, they must be limited to the bare statement and not the reason for those statements. *See United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) ("[T]he state-of-mind exception does not permit the witness to relate any of the defendant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind."); *United States v.*

*Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) (same, and noting: "If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition—"I'm scared"—and not belief—"I'm scared because Galkin threatened me.").

Defendant may, of course, make any self-exculpatory statements she wishes, so long as she takes the witness stand. But should she decide to exercise her right not to testify, she does not thereby have license to circumvent the rules of evidence. In light of well-settled precedent cited herein, the Court should grant the government's motion *in limine* and forbid defendant from introducing her own self-exculpatory hearsay statements at trial.

## VII. Motion to Preclude Impermissible Use of Witness Interview Memoranda During Cross-Examination

In discovery provided to defendant, the government produced numerous memoranda prepared by law enforcement agents memorializing information conveyed by witnesses during interviews with the government. While the statements in these interviews do not qualify for admissibility under Rule 801(d)(1) because they were not made "under penalty of perjury" or at a "proceeding" as required by that rule, statements made in these interviews could be admissible under Rule 613 for impeachment purposes if they are inconsistent with the witness's trial testimony.[3]

[3] If the witness admits on the stand that the prior inconsistent statement is true, there is no hearsay issue and the statement is properly treated as substantive evidence, not merely as impeachment. *See* Fed. R. Evid. 801(d)(1) advisory committee notes to 1972 Proposed Rules ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem.").

As explained above, these interview statements must be truly inconsistent with trial testimony to be used for impeachment purposes under Rule 613. *See supra* page 24.

Of course, the agent's interview report itself—unless adopted by the witness—is *not* the witness's statement. *See United States v. Allen*, 798 F.2d 985, 994 (7th Cir. 1986) ("A federal agent's written impression of what a witness said, his strategy, or his conclusions from what the witness said are obviously not statements of the witness—unless the government agent who is the interviewer is himself a witness and testifies about the subject matter of the report."); *see also United States v. Schoenborn*, 4 F.3d 1424, 1429 and n.3 (7th Cir. 1993) (finding district court erred in admitting an FBI agent's interview report as a trial witness's past recollection recorded when the witness did not adopt the report). And it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959) (affirming district court's decision that a government agent's interview summary was not a statement within the scope of 18 U.S.C. § 3500).

Because an agent's interview report is not the statement of the witness, its contents are simply inadmissible because they are not relevant to the impeachment of the trial witness. *See Schoenborn*, 4 F.3d at 1429, n.3 ("If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible."). Therefore, given that the report itself is

inadmissible to impeach a witness, the government moves the Court to prohibit counsel from reading from an agent's interview report that is not in evidence while questioning a witness, displaying the report to the jury while asking a witness about a prior inconsistent statement from the interview, or asking the witness to read out loud from the report. Likewise, in cross-examining a witness about statements in an interview, unless the witness is the agent who prepared the report, counsel should not make verbal reference to the report in the questioning or use the report in a way that suggests that counsel has a memorialization of the statement.

Rule 612 permits a party to use a writing to refresh a witness's recollection. Under appropriate circumstances, an interview report could be used to refresh a witness's recollection about what was said during an interview. However, given the prejudice that can result from suggesting that an interview report is anything other than an agent's memorialization of a witness's interview, the government requests that the Court hold the parties to their obligation to lay a proper foundation prior to showing a witness an interview report.

A document (like an agent's interview report) may only be used to refresh a witness's recollection "only after his memory has been 'exhausted.'" *United States v. Carpenter*, 819 F.3d 880, 891-92 (6th Cir. 2016) (reversed on other grounds, *Carpenter v. United States*, 138 S.Ct. 2206 (2018)). Therefore, the government would object to counsel showing a document to a witness to refresh their memory without the witness first testifying that they cannot recall something relevant in response to a question.

## VIII. Conclusion

For the reasons set forth above, the government respectfully requests that the Court grant the foregoing motions *in limine*.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Mary Katherine McClelland*
MARY KATHERINE McCLELLAND
QUINN FORD
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: May 6, 2026